# EXHIBIT A

SUM-100

# SUMMONS
## *(CITATION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>GARTH BROOKS<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>JANE ROE | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>10/03/2024 11:55 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By Y. Ayala, Deputy Clerk** |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es:)* Los Angeles Superior Court<br><br>Stanley Mosk Courthouse, 111 N. Hill St. Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso:)*<br>24STCV25693 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Omar H. Bengali, Girard Bengali, APC 355 S. Grand Ave., Suite 2450, Los Angeles, CA 90071. Tel.: (323) 302-8300

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* 10/03/2024 | Clerk, by<br>*(Secretario)* David W. Slayton, Executive Officer/Clerk of Court<br>Y. Ayala | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**SUMMONS**

Exhibit A
Page 6

ROBERT J. GIRARD (BAR NO. 216949)
OMAR H. BENGALI (BAR NO. 276055)
**GIRARD BENGALI, APC**
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Tel.: (323) 302-8300
Fax: (323) 302-8310
rgirard@girardbengali.com
obengali@girardbengali.com

DOUGLAS H. WIGDOR (*Pro Hac Vice Admission Pending*)
JEANNE M. CHRISTENSEN (*Pro Hac Vice Admission Pending*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845
dwigdor@wigdorlaw.com
jchristensen@wigdorlaw.com

HAYLEY H. BAKER (*Pro Hac Vice Admission Pending*)
**HB ADVOCATES PLLC**
1831 12th Avenue S.
Nashville, TN 37203
Tel.: (615) 505-3260
hbaker@hb-advocates.com

*Attorneys for Plaintiff Jane Roe*

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/03/2024 11:55 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| JANE ROE,<br><br>        Plaintiff,<br><br>vs.<br><br>GARTH BROOKS,<br><br>        Defendant. | Case No. 24STCV25693<br><br>**UNLIMITED JURISDICTION**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>  **(1) Assault**<br>  **(2) Battery**<br>  **(3) Sexual Battery (Civ. Code § 1708.5)**<br>  **(4) Bane Act (Civ. Code § 52.1)**<br>  **(5) Ralph Act (Civ. Code § 51.7)**<br>  **(6) Gender Violence (Civ. Code § 52.4(c)(2))**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane Roe ("Plaintiff" or "Ms. Roe") hereby submits her Complaint against Defendant Garth Brooks ("Defendant" or "Brooks"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      In 1999, Plaintiff was hired to do the make-up and hair styling for the Grammy award winning artist Trisha Yearwood.   Ms. Roe continued to work for Ms. Yearwood over the years, as well as for many other celebrities, and in 2017 she started to do make-up and hair styling for Garth Brooks, Ms. Yearwood's husband.

2.      By 2019, after Brooks learned that Ms. Roe was experiencing financial difficulties, he hired Ms. Roe more often.   She was grateful for the additional income and thanked him repeatedly.

3.      It did not take long for Brooks to take advantage of her financial hardship.   Brooks seized what he saw as an opportunity to subject a female employee to a side of Brooks that he conceals from the public.   This side of Brooks believes he is entitled to sexual gratification when he wants it, and using a female employee to get it, is fair game.

4.      One day in 2019 when Ms. Roe was at Brooks' house to style his hair and do his make-up, she looked up in horror as Brooks walked out of the shower, naked, with an erection and pointing his penis at Ms. Roe, came directly toward her.   He grabbed her hands and forced them onto his erect penis.   Brooks appallingly told Ms. Roe that he had fantasized about this moment and wanted her to perform oral sex on him so that he could "come all over her face," specifically while she had her "glasses on."

5.      Shocked and confused, Ms. Roe pulled back and said she was not going to do what he wanted.   Knowing that she needed the work, however, Brooks correctly predicted that Ms. Roe did not leave.

6.      In May 2019, Brooks asked her to travel to Los Angeles with him for a Grammy tribute to Sam Moore.   Usually there were others on Brooks' private jet but this time, Ms. Roe and Brooks were the only two passengers.   Once in Los Angeles at the hotel, Ms. Roe could not believe that Brooks had booked a hotel suite with one bedroom and she did not have a separate room.

After they arrived, suddenly Brooks appeared in the doorway to the bedroom, completely naked. He stood there and flexed his muscles. Ms. Roe immediately had a sick feeling in her stomach, knowing she was trapped in the room alone with Brooks, with no one to help and far away from Nashville.

7.      Tragically, her worst fears came true when seconds later he was towering over her, his 6-foot and almost 300-pound frame ready to pounce on Ms. Roe, who is less than 5 feet and 100 pounds. As she began to panic, he grabbed her hands and pulled her into the next room and onto the bed where she could not escape his physical domination.

8.      Brooks' rape of Ms. Roe was painful and traumatic. Having no regard for her well-being and intent on his own sexual gratification at the expense of Ms. Roe's physical, mental and emotional trauma, at some point during the nightmare, Brooks even held her small body upside down by her feet and penetrated her.

9.      She was helpless to move from his grip and terrified at what was happening to her. While he held her upside down, dangling by her ankles -- all the blood rushed to her head, causing her to be dizzy and sick. While Brooks forcefully penetrated her, he said perverted things to Ms. Roe about his sexual prowess.

10.      Brooks also repeatedly slammed his penis into her vagina causing Ms. Roe's back to keep hitting his body over and over with such force she felt as if he was breaking her in two. Disgustingly, Brooks insisted that Ms. Roe wear her eyeglasses while he carried out his sexual assault fantasy.

11.      With cold disregard for Ms. Roe, when Brooks was finished, it was business as usual. Ms. Roe worked quickly to style his hair and do his make-up for the event so he was on time.

12.      Brooks subjected Ms. Roe to other appalling sexual conduct, all of which took place while Ms. Roe was working for him, that includes but is not limited to the following:

Exhibit A
Page 9

- Brooks openly talked about sexual subjects in front of Ms. Roe, including for example, cunnilingus;

- Brooks regularly changed his clothing in front of Ms. Roe, and often purposefully exposed his genitals and buttocks to Ms. Roe, knowing that she would respond with a look of horror and disgust;

- Brooks repeated the sexual fantasy he said when he came out of the shower with an erection and forced her hands on his penis to Ms. Roe, and forced her to listen to other sexual fantasies he had about her performing sexual acts on him;

- Brooks sent Ms. Roe sexually explicit text messages and pressured her to engage in sexting with him;

- After the sexual assault in Los Angeles, Brooks increased the frequency of saying his sexual fantasies about her aloud, along with his physical gropings of her breasts while she was doing his hair and make-up;

- Other sexually explicit remarks by Brooks included him telling Ms. Roe that he had "**fucked multiple women in every corner of a hotel room,**" "**white, black, brown, or whatever,**" and also said that he had done so "**on every surface**" in a hotel room;

- Brooks' increased frequency of his sexually charged conversations included his repeated remarks about having a threesome with his wife, Ms. Yearwood, in which he suggested that Ms. Roe would be the third person, which Ms. Roe believes Brooks' wife overheard on at least one occasion;

- On too many occasions to list, Brooks would lasciviously stare at Ms. Roe's breasts and pressure Ms. Roe to open her shirt to allow him to physically touch her breasts for purposes of his arousal after which Brooks would then masturbate; and regarding this, Brooks, who said he would "**take care of himself,**" also told Ms. Roe he could not let her see because, "**when I come, it's gallons.**";

- In late October 2019, Brooks brought Ms. Roe to Los Angeles for five days during which he physically groped her body including her breasts; Ms. Roe was terrified to be in a hotel again worried that he would force himself on her. Her fears were justified as one morning when Ms. Roe went to Brooks' room to do his hair and make-up, he was on the bed, face down, wearing loose shorts and holding his crotch, and made it clear that he wanted to do what he had done before in Los Angeles with Ms. Roe on May 11. Ms. Roe managed to escape the situation because he was running late and people were waiting to pick him up;

- At times, Brooks implied the groping of her breasts would continue despite Ms. Roe insisting this was unwanted, for example, one time when he said while groping her, "Next time we mess around," and Ms. Roe clearly said "no," he became visibly angry at Ms. Roe and left;

- The frequency was such that it was inevitable that other employees of Brooks's likely saw or heard instances of the unwanted physical groping of her breasts while she was styling his hair and doing his make-up;

- In or about May 2020, Brooks, while speaking to his manager, and with his wife also present, directly in front of Ms. Roe talked about inventing a shampoo bottle that would double as a dildo. When Ms. Roe became uncomfortable and would not join in the conversation Brooks became upset and slammed his fists down on the kitchen counter in frustration so hard that items on the counter moved and he leaned in and spoke in a threatening manner to Ms. Roe. Following this incident, Ms. Roe sent a text to Brooks:

  - "I have thought a lot about the conversation of last Monday. I can't work in an environment where explicit sexual comments are made about shampoo bottles doubling as dildos. I mean you no harm, and if you truly value my work, I am happy to show up tomorrow and/or whenever you may need my services."[1]

13.     During phone conversations in 2020, after she told Brooks that she was upset he told his wife that Ms. Roe had seen his penis, Brooks tried to minimize what happened and said:

> "Oh sweetheart – for one, I think I know Trisha pretty well and she wasn't uncomfortable. And I said you saw my stuff…..that was  it…we were talking about something and it just came up. Look, I'm worried you are over thinking this."

14.     After the sexual assault in Los Angeles, Brooks told Ms. Roe about a mysterious text message he received in which a person claimed that Brooks had "**ruined his life.**"  In a phone conversation about this text, Brooks said he had "no idea" who had texted him the message and suggested that he thought it was Ms. Roe's husband who had sent the text and tried to get her to reveal her husband's phone number.

---

[1]     Any email, text message or content of telephone conversations placed within quotations herein, are direct quotes from the documents or audio recordings.

15.    Brooks told Ms. Roe, "I never want to hurt anybody so that one [the mysterious text], it bothered me. ***It bothered me***. I didn't know the number…."

16.    Still referring to the supposed text message, Brooks also said: "And that killed me. It broke my heart, like god, *I never want to hurt anybody*. So I was just – *I was scared to death*." Brooks then started to talk about the fact that Ms. Roe had not worked for Brooks for several months, so he had one of his employees call her to see what was happening, "And then, you know, when they called you for work and you couldn't do it for two months, I thought ohhhhhhhh craaaap! That's what I thought. Oh crap! So, I was trying to seek you out to come talk … **or whatever I needed to do,** but just, uh, **I don't want to hurt anybody**, man. And just, … **I just felt bad.**"

17.    Of course Brooks knew that the sexual assault and rape that he had subjected Ms. Roe to in Los Angeles was "bad" and further, she had told him about the severe back and neck pain she was experiencing.

18.    Concerned about the repercussions if she denied him the ability to sexually force himself on her again, Ms. Roe said on a call to Brooks in 2020, "I want to make sure that  - that even though I've told you 'no', that you're cool with 'no'. **I mean 'no' as in 'no fooling around like we had done–** you are cool with that? Right?"

19.    She was fearful that despite what he said that Brooks was angry and upset with her. Ms. Roe said: "when I saw you … with [another music artist], you were pretty upset with me." Incredibly, Brooks replied as follows:

> "Noooooo! I would never be upset with you….look at it this way, okay? Look at it – the best way I can explain it is. **Me and you broke into a jewelry store and the second we broke the door we looked at each other and said this isn't right. But we already had broken the door. And so, I think me and you get out and run and just hope that nobody ever finds out and just love one another and be friends. … Is that fair?"**

20.    Brooks told her in 2020: "I work with the best. And I don't want to do something stupid that breaks this team up. So … I will do whatever I need to do or do whatever I don't need

to do.  But I just want to keep working with you…. but <u>if you feel weird working with me</u>, it's fine. We don't have to work together."

21.    In response, Ms. Roe said, "I've never – found myself in a situation that is…. I just don't know that I'm going to be able to look up from.  And I'm frankly, **I am a little frightened of you ... I really am.**"

22.    Brooks said, "Sweet baby! I'm so sorry. I can't imagine! **That makes me frightened of you!**"

23.    In this phone conversation, Ms. Roe explains that it would be "difficult" to work with Brooks again, to which Brooks said, "I am asking you to work together forever," and "you have a place here as long as you want it.  I'm lucky to have you ….  I don't want this to go anywhere.  And I don't want something that happened in the moment to screw the whole 20 years I've known you."

24.    In addition to phone calls, there were multiple text exchanges between Brooks and Ms. Roe but while Ms. Roe was at a studio with Brooks to style his hair in 2020, Brooks surreptitiously took her phone and deleted most of the text messages that he had sent to her containing explicit sexual content.

25.    Eventually Ms. Roe was unable to continue working for Brooks and she sought legal counsel about what had happened.  In addition, in or about May 2021, Ms. Roe moved to Mississippi.

26.    When Ms. Roe's counsel contacted Brooks and disclosed the fact that Ms. Roe was prepared to file a complaint in California to hold him accountable for his sexual assaults, and even shared a copy of the drafted California complaint with Brooks, he used the fact that Ms. Roe had dared to speak about the harm he forced on her as an opportunity to inflict even more harm and pain on Ms. Roe.

27.    Specifically, while pretending to be in discussions with Ms. Roe to resolve her legal claims against him, on September 13, 2024, Brooks filed a preemptive abusive Complaint against Ms. Roe under the Declaratory Judgment Act, in the United States District Court For The Southern

District of Mississippi, Northern Division, entitled *John Doe v. Jane Roe*, Case No. 24 Civ. 00547 (HTW) (LGI) (hereinafter the "**Abusive Mississippi Action**").

28.     Incredibly, in the Abusive Mississippi Action Brooks labeled himself the "victim" and claimed that Ms. Roe was a lying extortionist who intended on destroying his professional reputation.  Brooks alleged that she threatened to file her complaint, <u>in California</u>, only because Brooks refused to give her a raise and pay for health insurance.

29.     The Abusive Mississippi Action by Brooks is a blatant attempt to further control and bully his sexual assault victim by utilizing his multi-millionaire resources to game the legal system.

30.     As part of the lawsuit he filed against Ms. Roe in desperation, Brooks simultaneously filed a motion to proceed under the pseudonym "John Doe."  The basis for this, as described by Brooks, was because he has a "well-earned reputation as a decent and caring person," and therefore, if the sexual assault allegations are disclosed, he says it would create "unavoidable damage to his family."

31.     Brooks is desperate to prevent his millions of fans from learning about the horrific things he has said and done to a junior female employee who did nothing to deserve such treatment.

32.     But our legal system is not in place to allow wealthy wrongdoers the ability to run work-arounds on sexual assault victims who attempt to hold perpetrators accountable.  Yet, this is precisely what Brooks is trying to do in the Abusive Mississippi Action.

33.     As set forth below, Ms. Roe commences this action pursuant to California's Sexual Abuse and Cover-Up Accountability Act, AB 2777, because her claims are "based on conduct that occurred on or after January 1, 2009, and [are] commenced []after January 1, 2019," see Cal. Code Civ. Proc. § 340.16(b)(3).  Ms. Roe seeks all appropriate relief to redress Brooks' egregious and unlawful actions in violation of common law torts for Assault and Battery, and in violation of California state statutes for Sexual Battery, Ca. Civ. Code § 1708.5; the Bane Act, Ca. Civ. Code § 52.1; the Ralph Act, Ca. Civ. Code § 51.7; and Gender Violence, Ca. Civ. Code § 52.4(c)(2).

**PARTIES**

34.     Plaintiff Jane Roe is an adult citizen and resides in the State of Mississippi.

35.     Defendant Garth Brooks is an adult citizen and resides in the State of Tennessee.

36.     This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10.  Jane Roe seeks damages under the statutory and common law of the State of California.

37.     Venue is proper is this Court pursuant to California Code of Civil Procedure § 395 because: (a) acts and transactions described herein occurred within this county.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**I.     Background: Garth Brooks**

38.     At age 62, Garth Brooks is a two-time Grammy winner and has sold more than 162 million albums, making him the second best-selling artist of all time in the U.S. - second only to the Beatles in total albums sold.

39.     His estimated net worth is about $400 million, and Forbes estimated that he made $45.5 million in 2018 alone.

40.      When he is not recording music and selling it, Brooks is involved in numerous foundations and charities, including many dedicated to children.  For example, he founded the Garth Brooks' "Teammates for Kids" Foundation[2] which, in partnership with professional athletes, corporations and other celebrities, helps children by funding and supporting programs in hospitals, sports for inner city children and educational opportunities.

41.     In addition, Brooks is involved in Habitat for Humanity, the Carter Work Project[3], in which he and his wife were named the inaugural Habitat Humanitarians alongside President

---

[2]     See https://www.teammatesforkids.com/tm4kBoard.php.
[3]     See https://www.habitat.org/carter-work-project/habitat-humanitarians-garth-brooks-and-trisha-yearwood.

Jimmy Carter and former First Lady Rosalynn Carter. In connection with this charitable work, Brooks has publicly said that "When I think of home, it is that safe place, one of those things that you don't really think about every day if you have always had a place to live. The thing that I have learned through volunteering with Habitat is everybody doesn't have a roof over their head. But what I love about Habitat is that it provides that basic first step that creates a haven and a safe place."

42.    Brooks' wife Ms. Yearwood has publicly said about Brooks' volunteer work with Habitat for Humanity, the following, "With Garth, 'generous' is the word that comes to mind. He really takes joy in helping others. I think Habitat fits him perfectly because it gives him a chance to do all the things that he is just so good at naturally."

43.    Brooks, through his foundation, built a playroom inside UCLA Mattel Children's Hospital that he said the following about, "This is a Child Life Zone, and what I love about Child Life Zones is it's the one place in the hospital that doctors are not allowed,….. if you've got a child that needs care, what happens to the brothers and sisters? Well, they come down here and they get to be brothers and sisters together here." Brooks helped to build more than 15 children life zones in hospitals across the country.

44.    Helping children and building houses are not the only charities Brooks has dedicated resources to, he also helps support cancer research, has held concerts to fundraise for public television stations, such as Austin PBS, and even made a surprise appearance at the Nashville Unlimited Christmas concert, held at Christ Church Cathedral to benefit a nonprofit in Nashville.

45.    In 2024, Brooks performed on Mother's Day at the Vatican as part of the World Meeting on Human Fraternity, organized under the theme of #BeHuman, in the atrium of St. Peter's Basilica.

46.    In connection with his performance at President Biden's 2021 inauguration, Brooks said it was about "reaching across and loving one another."

47.    Brooks devotes countless hours and resources to showing the public this side of himself.  Brooks wants his fans to believe that this charitable person is who he is on stage and off.

48.    As these allegations demonstrate, there is nothing loving, safe or charitable about what Brooks subjected Ms. Roe.

**II.    Background: Ms. Roe**

49.    Ms. Roe is a professional make-up artist and hair stylist, who has worked in the music industry for more than thirty years.  Her work garnered her a loyal list of clients, many of whom are household names.

50.    Through her hard work, skill and dedication, Ms. Roe has performed the hair styling and make-up for celebrities appearing in countless publications such as Rolling Stone, Vanity Fair, In Style, Esquire and Nash Magazine.  Additionally, she has received numerous credits in advertising campaigns involving top celebrities and brands, and for her work in television commercials, and films.

51.    Throughout her career, Ms. Roe has collaborated with many of the top professional photographers in the world.

52.    Unfortunately, in late 2018, the pressure on Ms. Roe to provide financial support for her family increased, and she needed to take on as much work as she could handle.   Ms. Roe shared her financial challenges with Brooks and his wife.

**III.    Brooks Preys on Ms. Roe's Hardship**

53.    As part of her work for Brooks, Ms. Roe travelled to stadiums for concerts, such as to Notre Dame as part of his tour in October 2018, and to studios for filming for commercials and interviews, such as in December 2018 to New York City for the CBS Morning Show.

54.    She often performed work for him at the home he shared with his wife.

55.    Brooks intentionally fondled, grabbed and kissed his wife in close physical proximity to Ms. Roe, in a way that made Ms. Roe feel extremely uncomfortable.

56.    In addition, Brooks would tell Ms. Roe that he thought it was "hot" to see his wife be with another woman sexually, and implied that she could be the other woman.  Although it was disturbing, she did not respond to these suggestions.  Ms. Roe had worked for Ms. Yearwood since 1999, and worried that Ms. Yearwood would hear things he was saying to Ms. Roe and be upset with her – even though, of course, such behavior was initiated by Brooks.

57.     For example, Brooks openly talked about sexual subjects in front of Ms. Roe, including cunnilingus.

58.    Brooks regularly changed his clothing in front of Ms. Roe, and often purposefully exposed his genitals and buttocks to Ms. Roe, knowing that she would respond with a look of horror and disgust.

59.    In 2019, when she was at Brooks' home to do his hair and make-up, Ms. Roe set up her supplies in his bathroom as usual, but while she was setting up, Brooks started taking a shower in front of her, then came out naked with an erection pointing directly at Ms. Roe.

60.    In shock, before she knew what to do, he grabbed her hands and forced them onto his erect penis.

61.    Disgustingly, Brooks said that he wanted her to "go down on him" and he said he had "fantasies of her going down on [him] with her glasses [on]" and him ejaculating "all over her face."

62.    After this event, Brooks continued to repeat this particular sexual fantasy to Ms. Roe, as well as other fantasies he had about her.

63.     Brooks sent Ms. Roe sexually explicit text messages and pressured her to engage in sexting with him.

64.     On too many occasions to list, Brooks would lasciviously stare at Ms. Roe's breasts and pressure Ms. Roe to open her shirt to allow him to physically touch her breasts for purposes of his arousal, after which would then masturbate.  Regarding this arousal conduct, Brooks said he would "**take care of himself**," meaning masturbate until orgasm, and also told Ms. Roe he could not let her watch because, "**when I come, it's gallons.**"

65.     Other sexually explicit remarks by Brooks included him telling Ms. Roe that he had "**fucked multiple women in every corner of a hotel room**" "**white, black, brown, or whatever,**" and also said that he had done so **"on every surface"** in a hotel room.

### IV.    Sexual Assaults in California

66.     On April 30 to May 1, 2019, Ms. Roe travelled to San Franscisco with Brooks to do his make-up and hair styling for an event.

67.     On May 11, 2019, Brooks asked her to work in Los Angeles for a tribute show for Sam Moore.  They left in the early morning hours from Nashville and arrived in Los Angeles and went directly to the hotel.

68.     They were the only two passengers on his private jet, which was unusual.  Once in Los Angeles at the hotel, Ms. Roe was shocked to learn that he had booked only one hotel room, and she did not have a separate room.  When she dared to ask if she could have a separate room, Brooks said "no."

69.     Brooks wanted her isolated and alone, because he knew exactly what he was going to do to her.

70.     No other employees were on this trip for the same reason.  Brooks planned his attack well in advance.

71.    Suddenly to her horror, Brooks was standing in the doorway to the bedroom without any clothes on.  Brooks' fantasy about sexually violating Ms. Roe while she had her glasses on was about to happen.

72.    Brooks grabbed her hands and pulled her into the other room and onto the bed.  Ms. Roe, less than 5 feet and about 100 pounds, was no physical match for Brooks who is 6 feet, weighs almost 300 pounds and regularly lifts weights.

73.    Brooks' rape of Ms. Roe was painful and traumatic.  Having no regard for her well-being and intent on his own sexual gratification at the expense of Ms. Roe's physical, mental and emotional trauma, at some point during the nightmare, Brooks even held her small body upside down by her feet and penetrated her.

74.    She was helpless to move from his grip and terrified at what was happening to her. While he held her upside down, dangling by her ankles -- all the blood rushed to her head, causing her to be dizzy and sick.  Brooks said  perverted things to Ms. Roe about his sexual prowess.

75.    Brooks also repeatedly slammed his penis into her vagina causing Ms. Roe's back to hit his body over and over with such force she felt as if he was breaking her in two.

76.    Brooks insisted that Ms. Roe wear her eyeglasses while he carried out his sexual assault fantasy demonstrating that he had thought about doing this far in advance of the May 11, 2019 trip to Los Angeles.

77.    Knowing exactly what he was doing and the pain he was forcing her to endure against her will, at one-point Brooks even said to Ms. Roe that he knew he was "hurting" her.

78.    Disgustingly, this only caused him to drop her from the upside-down position and forced her over to a small loveseat where, after placing her face down, Brooks engaged in other acts too graphic to include in this Complaint.

79.    She was terrified.

80.     With cold disregard for Ms. Roe, when Brooks was finished, it was business as usual for Brooks, and Ms. Roe worked quickly to style his hair and do his make-up for the event.

81.     Ms. Roe was physically ill and already in pain by the time they flew back to Nashville.  In fact, a migraine had already started.

82.     In the weeks after this horrific violence, Ms. Roe experienced debilitating pain in her neck and lower back, which she sought medical treatment for.  In addition, she had to seek treatment from her ob-gyn for damage Brooks caused during the Los Angeles rape.

83.     Sadly, during the summer of 2019, the trauma from Brooks's rape became so unbearable for Ms. Roe that she planned to commit suicide.  She felt hopeless and did not see how she would move past what had happened.  Fortunately, she did not act on her thoughts and managed to continue to keep showing up and earning money to support her family.

84.     She knew that she could not say anything to Brooks or anyone who worked for him about what he had done.

85.     This is why, when Brooks asked her to work with him at another job in Los Angeles, she still agreed to go.

86.     On October 28, 2019, Brooks had Ms. Roe travel with him back to California for five days of work.  On this trip back to Los Angeles for five days, Ms. Roe was terrified to be in a hotel room with him again worried that he would force himself on her.

87.     Fortunately, other employees were on the trip and in close proximity within the hotel.  However, this did not stop Brooks from repeatedly squeezing, touching and groping her breasts any time he could.  Brooks even made Ms. Roe open her shirt to expose her breasts to him for this purpose of his own sexual gratification.

88.     Her fears that he would subject her to unwanted sex were justified as one morning when Ms. Roe went to Brooks' room to do his hair and make-up, he was on the bed, face down,

wearing loose shorts and holding his crotch.  The way he looked at her, Ms. Roe understood he was making it clear that he wanted to do what he had done on May 11.   She narrowly escaped another sexual assault because he was running late and other people were waiting to pick him up.

89.     Brooks did not hide that he was angry and upset with Ms. Roe for not allowing him to sexually violate her.

90.     After the sexual assault and rape in Los Angeles, Brooks increased the frequency of saying his sexual fantasies about her aloud, along with his physical gropings of her breasts against her will.  Disgistingly, he often forced her to do this while she was styling his hair and doing his make-up.

91.     At times, Brooks implied the groping would continue despite Ms. Roe insisting this was unwanted, for example, one time when he said while groping her, "next time we mess around," and Ms. Roe clearly said "no," he became visibly angry at Ms. Roe and left.  Ms. Roe, needing the financial support from her work for Brooks, was petrified that her refusals would cause him to fire her.

92.     Brooks increased the frequency of his sexually charged conversations with Ms. Roe, and this included his repeated remarks about having a threesome with his wife in which he implied that Ms. Roe would be the third person, which Brooks' wife overheard on at least one occasion, Ms. Roe believes.

93.      In or about May 2020, Brooks, while speaking to his manager, Randy, and Ms. Yearwood, directly in front of Ms. Roe talked about inventing a shampoo bottle that would double as a dildo.  When Ms. Roe became uncomfortable and would not join in the conversation Brooks became upset and slammed both of his fists onto the kitchen counter-top so forcefully that items were tossed around and he leaned in towards Ms. Roe and spoke in a threatening manner to her.  Following this incident, she was so upset that Ms. Roe sent a text to Brooks "I have thought a lot

about the conversation of last Monday. I can't work in an environment where explicit sexual comments are made about shampoo bottles doubling as dildos. I mean you no harm, and if you truly value my work, I am happy to show up tomorrow and/or whenever you may need my services."

94.     After sending the text, she wrote him an email with the same content and copied Ms. Yearwood on that email.

95.     Additionally, during phone conversations in 2020, Brooks said, *inter alia*, the following to Ms. Roe: After she told Brooks that she was upset he told his wife that Ms. Roe had seen his penis, Brooks tried to minimize what was said, and said "Oh sweetheart – for one, I think I know Trisha pretty well and she wasn't uncomfortable. And I said you saw my stuff…. that was it…we were talking about something and it just came up. Look, I'm worried you are over thinking this."

96.     After the sexual assault in Los Angeles, Brooks told Ms. Roe about a mysterious text message he received in which a person claimed that Brooks had "**ruined his life.**"  In a phone conversation about this text, Brooks said he had "no idea" who had texted him the message and suggested that he thought it was Ms. Roe's husband who had sent the text and tried to get her to reveal her husband's phone number.  Brooks told Ms. Roe, "I never want to hurt anybody so that one [the mysterious text], it bothered me. *It bothered me*. I didn't know the number…."

97.     Brooks' claim about the unknown text in which someone purportedly said he had ruined his life, led to this exchange between he and Ms. Roe: Brooks: "And that killed me. It broke my heart, like god, *I never want to hurt anybody*. So I was just – *I was scared to death*. And then, you know, when they called you for work and you couldn't do it for two months I thought ohhhhhhhh craaaap. That's what I thought. Oh crap. So, I was trying to seek you out to come talk

… or whatever I needed to do but just uh I don't want to hurt anybody, man. And just, **I just felt bad."**

98.    Ms. Roe said over the phone to Brooks, "I want to make sure that that even though I've told you 'no,' that you're cool with 'no.' I mean 'no' as in 'no fooling around like we had done' – you are cool with that? Right?"

99.    Ms. Roe also said: "…when I saw you at the [redacted name of event] when you were doing the [redacted event], you were pretty upset with me."

100.    Brooks replied: "Noooooo! I would never be upset with you…. look at it this way, okay? Look at it – the best way I can explain it is:  **Me and you broke into a jewelry store and the second we broke the door we looked at each other and said this isn't right.  But we already had broken the door.  And so, I think me and you get out and run and just hope that nobody ever finds out and just love one another and be friends. …. Is that fair?"**

101.    In his Abusive Mississippi Action, Brooks says Ms. Roe "falsely accused" him of sexual misconduct.   He will not be able to explain why he told her in 2020:  "I work with the best. And I don't want to do something stupid that breaks this team up. So … I will do whatever I need to do or do whatever I don't need to do. But I just want to keep working with you…. but <u>if you feel weird working with me</u>, it's fine. We don't have to work together."

102.    In response, Ms. Roe said, "I've never – found myself in a situation that is… I just don't know that I'm going to be able to look up from … And I'm frankly, **I am a little frightened of you ... I really am.**"

103.    Brooks said, "Sweet baby! I'm so sorry. I can't imagine! **That makes me frightened of you!**"

104.    In this phone conversation, Ms. Roe explains that it would be "difficult" to work with Brooks again, to which Brooks said, "I am asking you to work together forever," and "you

have a place here as long as you want it. I'm lucky to have you … I don't want this to go anywhere. And I don't want something that happened in the moment to screw the whole 20 years I've known you."

105.    Brooks further said to Ms. Roe, "I love you to death honey, I don't ever want to see you hurt, or cry or want or need for anything … if you are down physically, if you need income, please let me know – I want to help. … if this situation happened a year ago, before me and you did anything silly with each other, the answer would've been the same. Yes, let me help…. <u>I'm so sorry that we crossed a line</u>. I don't want to hurt anybody. I really don't."

106.    In addition to phone calls, there were multiple text exchanges between Brooks and Ms. Roe with sexually explicit content.  Again, showing that Brooks knew exactly what he has done to her, one day in 2020 when she was on site at a studio to style Brooks' hair and do his make-up, he took her phone and deleted most of the text messages that he had sent to her.

107.    Brooks uses more than one cell phone, and sometimes would use different "names" and email addresses to communicate with Ms. Roe.  He would tell Ms. Roe ahead of time that it would be him sending her communications, under a different name. For example, in 2019 he texted her to use a certain email address with a woman's name: "It will come back to you as [woman's first name] [woman's last name] but that is me [smiley face emoji]."[4]

108.    Although Brooks thought he deleted everything on Ms. Roe's phone, he did not, and some texts remain, including those in which he encouraged Ms. Roe to speak in a sexualized manner to him, such as this message referring to his "huge stick":

---

[4]    Because the woman's name he used is that of an employee, Ms. Roe has not included it here.

109.    Based on the information set forth above, which is a sampling of some, but not all of the acts Brooks subjected her to, it is obvious why he resorted to such a drastic measure as filing the Abusive Mississippi Action.

110.    Brooks is desperate to prevent his millions of fans from learning about the horrific things he has said and done to a junior female employee who did nothing to deserve such treatment.

111.    Fortunately, Brooks is not entitled to misuse legal statues, such as the Declaratory Judgment Act to further harm Ms. Roe.

112.    Ms. Roe's agency as a survivor and her ability to hold Brooks accountable for his predatory behavior should not be thwarted by the preemptive Abusive Mississippi Action.

113.    While Ms. Roe has been victimized again by Brooks, she commenced this action to hold him accountable.

### FIRST CAUSE OF ACTION
#### (Assault)

114.    Ms. Roe incorporates herein by reference, as though set forth in full, all preceding paragraphs of this Complaint.

115.    Brooks intentionally and without consent caused harmful or offensive contact with Ms. Roe, including by intentionally bringing her to California for work in 2019 and purposefully isolating her from other employees.

116.    Brooks ensured ahead of time that he would force Ms. Roe to share a hotel suite with him where, as detailed above, he subjected her to unwanted sexual intercourse, and sexually assaulted and raped her for his own sexual gratification.

117.    As a result, Ms. Roe has suffered and will continue to suffer mental and physical pain and suffering.

### SECOND CAUSE OF ACTION
#### (Battery – Civil Sexual Assault)

118.    Ms. Roe incorporates herein by reference, as though set forth in full, all preceding paragraphs of this Complaint.

119.    Brooks committed a battery against Plaintiff when he engaged in unlawful, intentional and offensive touching or application of force to Plaintiff's person when he forced her to engage in sex against her will.  Brooks ensured ahead of time that he would force Ms. Roe to share a hotel suite with him where she was isolated and defenseless.

120.    Brooks held her by her ankles upside-down, restricting her ability to move or fight back in any manner.  Brooks penetrated her vagina with his penis and subjected her to forced oral sex against her will.  Brooks did this for his own sexual gratification.

121.    Plaintiff did not act freely and voluntarily, and the actions were against Plaintiff's will, as defined in Cal. Penal Code § 243.4.  Brooks knew that he was subjecting her to pain and trauma, as detailed above.

122.    Additionally, Defendant Brooks committed a rape against Plaintiff, as defined in Cal. Penal Code § 261.

123.    Plaintiff also was incapable of resisting because of Brooks sheer physical size and strength as compared to Ms. Roe.

124.    As a result of Defendant's alleged conduct, Plaintiff has suffered severe physical harm, emotional distress, humiliation, embarrassment, anxiety, economic harm and other consequential damages.

125.    The conduct of Defendant Brooks described above was willful, wanton and malicious.  At all relevant times, Defendant acted with conscious disregard of Plaintiff's rights and feelings, acted with knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to and did cause fear, physical injury and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant according to proof at trial.

126.    This cause of action is timely under California's Sexual Abuse and Cover-Up Accountability Act, AB 2777 because it is "based on conduct that occurred on or after January 1, 2009, and is commenced []after January 1, 2019," and is thereby revised by Cal. Code Civ. Proc. § 340.16(b)(3).

## **THIRD CAUSE OF ACTION**
### **(Sexual Battery - Cal. Civ. Code § 1708.5)**

127.    Ms. Roe incorporates herein by reference, as though set forth in full, all preceding paragraphs of this Complaint.

128.    Defendant Brooks committed a sexual battery under Cal. Civ. Code § 1708.5 **w**hen he intended to and did cause harmful and/or offensive contact with intimate parts of Ms. Roe, and his sexually offensive contact included when he forced her to engage in sex against her will. Brooks ensured ahead of time that he would force Ms. Roe to share a hotel suite with him where he kept her isolated and defenseless.

129.    Brooks held her by her ankles upside-down, restricting her ability to move or fight back in any manner.  Brooks penetrated her vagina with his penis and subjected her to forced oral sex against her will. Brooks did this for his own sexual gratification.

130.    Plaintiff did not act freely and voluntarily, and the actions were against Plaintiff's will.  Brooks knew that he was subjecting her to pain and trauma, as detailed above.

131.    Additionally, Defendant Brooks committed a rape against Plaintiff, as defined in Cal. Penal Code § 261.

132.    Plaintiff also was incapable of resisting because of Brooks sheer physical size and strength as compared to Ms. Roe.

133.    As a result of Defendant's alleged conduct, Plaintiff has suffered severe physical harm, emotional distress, humiliation, embarrassment, anxiety, economic harm and other consequential damages.

134.    The conduct of Defendant Brooks described above was willful, wanton and malicious.  At all relevant times, Defendant acted with conscious disregard of Plaintiff's rights and feelings, acted with knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to and did cause fear, physical injury and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant according to proof at trial.

135.    This cause of action is timely under California's Sexual Abuse and Cover-Up Accountability Act, AB 2777 because it is "based on conduct that occurred on or after January 1, 2009, and is commenced []after January 1, 2019," and is thereby revised by Cal. Code Civ. Proc. § 340.16(b)(3).

136.    As a result, Ms. Roe has suffered and will continue to suffer mental and physical pain and suffering.

## FOURTH CAUSE OF ACTION
### (Bane Act - Cal. Civ. Code § 52.1)

137.    Ms. Roe incorporates herein by reference, as though set forth in full, all preceding paragraphs of this Complaint.

138.    At all relevant times herein, Brooks interfered or attempted to interfere by threat, intimidation or coercion and by physical force, with Ms. Roe's exercise or enjoyment of her right to be free from sexual assault and sex discrimination as secured by the laws of California.

139.    As a result, Ms. Roe has suffered and will continue to suffer mental and physical pain and suffering.

## FIFTH CAUSE OF ACTION
### (Ralph Act - Cal. Civ. Code § 51.7)

140.    Ms. Roe incorporates herein by reference, as though set forth in full, all preceding paragraphs of this Complaint.

141.    At all relevant times herein, and on May 11, 2019, Brooks committed a violent act against Ms. Roe, motivated by her sex, by penetrating her vagina with his penis without her consent, in that he would not and could not have committed the same violence against a man, and that violent act was a substantial factor in the resulting physical and mental harm suffered by Ms. Roe.

142.    Defendant Brooks committed a rape against Plaintiff, as defined in Cal. Penal Code § 261.

143.    Defendant Brooks also intentionally subjected her to unwanted oral sex against her will.

144.    Brooks further subjected Ms. Roe to unwanted forced sexual groping, touching, squeezing of her breasts, forced exposure of her breasts to him for his sexual gratification, including on the five-day trip to Los Angeles beginning on October 28, 2019.

145.    As a result, Ms. Roe has suffered and will continue to suffer mental and physical pain and suffering.

### SIXTH CAUSE OF ACTION
**(Gender Violence - Cal. Civ. Code § 52.4(c)(2))**

146.    Ms. Roe incorporates herein by reference, as though set forth in full, all preceding paragraphs of this Complaint.

147.    At all relevant times herein, on May 11, 2019 in Los Angeles, Defendant Brooks committed a rape against Plaintiff, as defined in Cal. Penal Code § 261, and he did so for the purpose of arousal, gratification or abuse against her will and by force and is therefore liable for gender violence.

148.    As set forth above in detail, Defendant Brooks also subjected her to unwanted oral sex against her will.

149.    Brooks further subjected Ms. Roe to unwanted forced sexual groping, touching, squeezing of her breasts, forced exposure of her breasts to him for his sexual gratification, including on the five-day trip to Los Angeles beginning on October 28, 2019.

150.    As a result, Ms. Roe has suffered and will continue to suffer mental and physical pain and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant Brooks for the following relief:

A.    For monetary and/or compensatory damages.

B.    For punitive damages/exemplary damages according to proof and pursuant to Civil Code § 1708.5(3)(b);

C.    For attorney's fees and/or penalties pursuant to Civil Code § 1708.5(3)(b), and Civil Code § 51.7, 52 and 52.4;

D.    For costs of suit herein incurred; and

E.    For such other and further relief as the court may deem proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

Dated: October 3, 2024                    Respectfully submitted,

**WIGDOR LLP**

By: _____
        Douglas H. Wigdor
        (*Pro Hac Vice Admission
        Pending*)
        Jeanne M. Christensen
        (*Pro Hac Vice Admission
        Pending*)

85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
jchristensen@wigdorlaw.com

**GIRARD BENGALI, APC**

By: _____
        Omar H. Bengali

Robert J. Girard
Omar H. Bengali
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (323) 302-8300
Facsimile: (323) 302-8310
rgirard@girardbengali.com
obengali@girardbengali.com

**HB ADVOCATES PLLC**

Hayley H. Baker
(*Pro Hac Vice Admission Pending*)
1831 12th Avenue S.
Nashville, TN 37203
Tel.: (615) 505-3260
hbaker@hb-advocates.com

*Attorneys for Plaintiff Jane Roe*